[Cite as *State v. Jarju*, 2026-Ohio-2835.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                      :

                                          No. 24AP-228

v.                                               :          (C.P.C. No. 20CR-1614)

Creshella C. Jarju,                              :          (REGULAR CALENDAR)

    Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on July 23, 2026

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Jeffrey D. Devereaux*, for appellee. **Argued:** *Jeffrey D. Devereaux*.

**On brief:** *Siewert & Gjostein Co. LPA, Thomas J. Gjostein*, for appellant. **Argued:** *Thomas J. Gjostein*.

---

APPEAL from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1} Defendant-appellant, Creshella C. Jarju, appeals the judgment of the Franklin County Court of Common Pleas. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Jarju and Roger Prophet spent the evening of April 1, 2020 at 3972 Carlton Avenue drinking and smoking crack. Early in the morning of April 2, 2020, Jarju made several calls to 911 about shots being fired. Police responded, but they were unable to make contact with anyone in the home and they left after finding no activity.

{¶ 3} A few hours later, a neighbor called 911 and police were again dispatched to 3972 Carlton Avenue. They arrived to find Jarju lying in the front yard and acting

erratically. Jarju told officers that someone had shot Prophet inside his house. Officers entered the house to find Prophet dead from a gunshot wound in a hallway outside the bathroom.

{¶ 4} When officers returned to talk to Jarju, she gave the officers conflicting information saying that someone shot Prophet and that Prophet may have shot himself. Detectives initially processed the scene as a suicide until the body was turned over and no weapon was found. Police then stopped to obtain a search warrant and began investigating Prophet's death as a homicide.

{¶ 5} The investigation revealed that several shots were fired from inside the bathroom at Prophet, and at least one was fired through the closed bathroom door. Jarju testified that she was alone in the bathroom. Jarju tested positive for gunshot residue, and she had a burn marker on the index finger of her right hand, consistent with holding a revolver that was hot from multiple firings.

{¶ 6} DNA belonging to both Jarju and Prophet were found at the crime scene. Criminalists concluded that someone attempted to clean up blood at the crime scene. The weapon was not initially recovered. The coroner conducted an autopsy and declared Prophet's death was a homicide. Over a year later, in July 2021, Jarju informed detectives that she had hidden a firearm under the bathroom sink in Prophet's residence. The weapon was retrieved, tested, and confirmed to be the murder weapon.

{¶ 7} On April 7, 2022, Jarju was indicted on murder, tampering with evidence, and having a weapon while under disability ("WUD") charges. A jury trial commenced on January 9, 2024 on the murder and tampering with evidence charges. Jarju testified that she was in the bathroom smoking crack, heard a noise, and opened the door 15 minutes later to find Prophet lying on the floor with blood on his face. Jarju took a gun out of Prophet's hand, retreated back to the bathroom, and locked the door. Jarju testified that the revolver accidently discharged once and that she hid the gun in the bathroom.

{¶ 8} Jarju was found guilty by the jury of murder and tampering with evidence charges, and the trial court found her guilty of the WUD charge. Jarju was sentenced to 24 years to life.

{¶ 9} On April 2, 2024, Jarju filed a delayed notice of appeal, which we granted by judgment entry on April 4, 2024.

## II. Assignment of Error

{¶ 10} Appellant appeals and assigns the following sole assignment of error for our review:

> Appellant's conviction was not supported by the sufficiency of the evidence in violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution and Article I, Sections 1 & 16 of the Ohio Constitution and the conviction was also against the manifest weight of the evidence.

## III. Discussion

{¶ 11} Under her sole assignment of error, Jarju contends that her convictions were not supported by sufficient evidence, or alternatively, were against the manifest weight of the evidence. A sufficiency of the evidence argument challenges whether the state's evidence on each element of an offense sustains the verdict. *State v. Brown,* 2016-Ohio-7944 (10th Dist.). Whether the evidence is legally sufficient to sustain the verdict is a question of law we review de novo. *State v. Robinson,* 162 Ohio St. 486 (1955). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Dennis*, 2008-Ohio-6125, ¶ 31 (10th Dist.). The trier of fact determines the credibility of the witnesses and the weight of the evidence, and a verdict will not be disturbed if it is apparent that reasonable minds could not reach the same conclusion as the trier of fact. *State v. L.E.F.,* 2014-Ohio-4585 (10th Dist.).

{¶ 12} Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's credibility. *State v. Smith*, 2009-Ohio-2166 (10th Dist.). Instead, it asks whether the evidence against a defendant, if believed, satisfies each element of the crime. *State v. Ward*, 2020-Ohio-465 (10th Dist.).

{¶ 13} The elements of a criminal offense may be proven by direct evidence, circumstantial evidence, or a combination of both. *State v. Cunningham*, 2024-Ohio-2032 (10th Dist.). Circumstantial evidence requires the drawing of inferences reasonably permitted by the evidence, and a "conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991).

{¶ 14} To establish that Jarju was guilty of murder, the state was required to show that she purposely caused Prophet's death. R.C. 2903.02(A). Jarju does not challenge the sufficiency of the state's evidence to prove a specific element of murder, but generally contends the jury was not presented with sufficient evidence to identify her as the perpetrator. She maintains that her conviction for murder is based on insufficient evidence because the state's entire case is based on the fact that there were only two people at the house, and if one is dead, she must be guilty. However, Jarju offered little in furtherance of her claim, and has not convinced us that the evidence does not support the verdict.

{¶ 15} Jarju stated that she had been smoking crack with Prophet for several hours, and at some point, Prophet was pointing a firearm at her. Jarju testified this made her uncomfortable and she went into the bathroom to get away from Prophet and smoke in peace. She testified that she heard a crashing noise while inside the bathroom, listened to determine if anyone else was in the house, and then opened the door to see Prophet on the floor. Jarju took the weapon from Prophet's hand and closed the door again. Jarju testified that the revolver's cylinder was not closed, and that the revolver fired as she was attempting to close the cylinder.

{¶ 16} Jarju called 911 from the bathroom. Police responded, announced their presence, and walked around the perimeter of the fairly small house. No one came to the door, and the officers left finding no suspicious activity. Jarju's neighbor testified that she was woken by loud knocking at her door and looked out a window to see Jarju collapsed on the ground. The neighbor testified that she called 911 but did not go outside.

{¶ 17} While Jarju testified to a single accidental shot fired while the door was closed, the crime scene indicated Jarju fired at least three shots from inside the bathroom. A detective testified that multiple shots from a revolver will cause the firearm to get hot from the repeated burning of gunpowder, and the heat was the source of a burn mark on Jarju's right index finger. However, Jarju testified the burn mark was from smoking crack.

{¶ 18} The coroner reported that the shot through the door was not the fatal shot because of stippling found on Prophet's face, which would not be possible through a closed door. The coroner ruled out suicide because there was no gun powder found on Prophet's hands and a lack of soot on his face. The coroner also found that the weapon was fired from

an intermediate range of several inches away, and that the projectile traveled at an acute upwards angle, front to back, through Prophet's head.

{¶ 19} Jarju was also convicted of tampering with evidence, which requires the state to prove Jarju altered, destroyed, concealed, or removed evidence "with purpose to impair its value or availability as evidence" knowing that an official investigation is occurring. R.C. 2921.12.

{¶ 20} Jarju alerted police to the incident when she called 911 and was aware that an investigation was imminent. She testified that she was the only other person in the house. Jarju hid the murder weapon in the area under the sink where she typically hid her pipe and cocaine under the sink, and she purposely neglected to inform detectives that the murder weapon was nearby. She failed to disclose its location for over a year, frustrating the murder investigation. Further evidence showed that she tried to clean up blood from the crime scene.

{¶ 21} Therefore, we find that the evidence supports the jury's conclusion that Jarju tampered with evidence at the murder scene.

{¶ 22} The trial court found that Jarju was guilty of having a firearm after a felony conviction of violence. In a bench trial, "the trial court assumes the fact-finding function of the jury." *State v. Banks*, 2009-Ohio-4383, ¶ 9 (10th Dist.). The parties stipulated to Jarju's previous conviction for three counts of assault on emergency personnel, in violation of R.C. 2903.13, felonies of the fourth degree. This conviction served as a disqualifying event precluding Jarju's use of a firearm. *State v. Steward*, 2019-Ohio-5258 (10th Dist.). We know that Jarju used a firearm to shoot the victim. Jarju testified that she removed the firearm from the victim and it fired accidentally. The evidence was sufficient to sustain Jarju's conviction of heaving a weapon while under disability.

{¶ 23} We turn now to Jarju's contention that her convictions are against the manifest weight of the evidence. In contrast to a sufficiency challenge, when reviewing the manifest weight of the evidence the appellate court must determine whether the greater amount of credible evidence supports the jury verdict. *State v. Saleh*, 2009-Ohio-1542 (10th Dist.). We function as a thirteenth juror and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage

of justice. *State v. Bethel*, 2006-Ohio-4853. If we determine that the fact finder clearly lost its way, we must reverse and order a new trial. *State v. Brightwell*, 2019-Ohio-1009 (10th Dist.). We will not reverse, however, if a reasonable trier of fact has substantial evidence to conclude that the essential elements of the offense were established beyond a reasonable doubt. *State v. Williams*, 2011-Ohio-4760 (10th Dist.).

{¶ 24} Only exceptional circumstances justify a conviction being reversed as being against the manifest weight of the evidence. *State v. Timmons*, 2005-Ohio-3991 (10th Dist.). "The fact that evidence can be subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams,* 2014-Ohio-3432, ¶ 24 (2d Dist.).

{¶ 25} Although she claims her convictions are against the manifest weight of the evidence, Jarju does not present or develop any meaningful argument in support of her argument. She does not identify any conflicts in the evidence, even though conflicting evidence is a prerequisite for a reversal on manifest weight grounds. *State v. Martinez*, 2023-Ohio-4846 (10th Dist.). Jarju only stated that the requisite culpability is absent, but does not reference a specific charge. She referenced her general sufficiency arguments and declared reasonable doubt existed on the convictions, resulting in a manifest miscarriage of justice.

{¶ 26} Under Ohio's murder statute, the legislature has specified the required degree of culpability as acting purposely. R.C. 2903.02. "[P]urpose or intent can be established by circumstantial evidence and through the surrounding facts and circumstances." *State v. Ross*, 2025-Ohio-2875, ¶ 25 (10th Dist.). The element of purpose may be presumed where the natural and probable consequences of a wrongful act are to produce death. *State v. Miller*, 2023-Ohio-3935 (3d Dist.).

{¶ 27} "When a person fires a gun at a person, purpose to cause death can be inferred." *State v. Hubbard*, 2013-Ohio-2735 (10th Dist.). "Although Jarju admitted to only firing the gun once, the record evidence indicated she fired it multiple times." The jury could reasonably infer that Jarju purposely caused Prophet's death when she fired the gun.

{¶ 28} A tampering with evidence charge requires that an individual must have knowledge that "an official proceeding or investigation is in progress, or is about to be or likely to be instituted." R.C. 2921.12. As stated earlier, Jarju first called 911 and then later

her neighbors called 911. Jarju knew that an investigation would happen, and she hid the firearm before the police arrived. The jury properly found that Jarju hid the weapon with the purpose of impairing its availability in the impending investigation. *State v. Dowen*, 2015-Ohio-302 (8th Dist.).

{¶ 29} Like the previous discussion regarding murder, a weapon while under disability charge requires knowing possession of a firearm, which was established when Jarju testified that she took Prophet's weapon from his body. *State v. Anderson*, 2024-Ohio-37 (9th Dist.). Jarju testified she handled the weapon and we know she then hid it. Given the record in this matter, Jarju has not demonstrated that it was unreasonable for the trial court to find that she possessed the murder weapon. *State v. Stolzenburg*, 2021-Ohio-3647 (12th Dist.).

{¶ 30} The trial court judged the credibility of each witness, including Jarju, and "was free to believe all, part, or none of the testimony of each witness." *State v. Colvin*, 2005-Ohio-1448, ¶ 34 (10th Dist.). The jury heard evidence of Jarju's history with substance abuse and her obvious physical condition, but neither negated an element of murder.

{¶ 31} For the reasons stated above, we reject Jarju's arguments that the evidence in this matter weighs in her favor. Based on the totality of the evidence, we find the judgment is not against the manifest weight of the evidence.

{¶ 32} Viewing the evidence in a light most favorable to the state, we find the state presented sufficient, competent, and credible evidence that Prophet died as a proximate result of Jarju shooting him. After a thorough review of the record, we cannot say that this is the exceptional case where the evidence weighs heavily in Jarju's favor and the jury is far off the path. Jarju's sole assignment of error is overruled.

## IV. Conclusion

{¶ 33} Having overruled Jarju's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

_____